UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO HERNANDEZ DOMINGUEZ, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> KRISTI NOEM, *et al.*, <br><br> Respondents. | Case No.  1:25-cv-1577-JDP <br><br><br> ORDER |

Pablo Hernandez Dominguez, Esvin Anibal Perez Guinea, Alejandro Alberto Suarez-Garcia, Miguelina Elizabeth Loen Vasquez, Fernando Gomez Ruiz, and Luis Villegas Cobaxin ("petitioners") seek a writ of habeas corpus under 28 U.S.C. § 2241.  They claim that immigration authorities have wrongfully subjected them to mandatory detention without the opportunity for a bond hearing in violation of the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause.  Petitioners have filed a motion for a temporary restraining order, seeking an order requiring that they be provided individualized bond hearings under 8 U.S.C. § 1226(a).  The motion was before the court for hearing on November 20, 2025.  For the following reasons, the motion for a temporary restraining order is granted.

1

## Background

Petitioners are Mexican and Guatemalan citizens currently in federal custody at ICE California City Corrections Center, Mesa Verde ICE Detention Center, and ICE Golden State Annex. ECF No. 1 at 16-18; ECF No. 1-3 at 5, 10, 14, 18, 22, 27. Limited information about petitioners is available in the written record, and neither party was able to offer additional detail at oral argument, but the documentation shows that between June 13, 2025, and October 7, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested petitioners and charged them as inadmissible and subject to deportation under 8 U.S.C. § 1182(a)(6)(A)(i). ECF No. 1 at 2. Petitioners allege that ICE has detained them during removal proceedings without individualized bond hearings, and without providing them an opportunity to post bond or to be released on other conditions.[1] *Id.* at 16. They claim that their treatment is the result of a new Department of Homeland Security policy instructing ICE employees to designate individuals charged as inadmissible under section 1182(a)(6)(A)(i) as ineligible for release on bond pursuant to 8 U.S.C. § 1225(b)(2)(A). *Id.* at 2-5. The petition alleges violations of: (1) 8 U.S.C. § 1226(a); (2) Department of Homeland Security and Executive Office for Immigration Review regulations; (3) the Administrative Procedure Act; and (4) their Fifth Amendment right to Due Process. *Id.* at 21-24.

## Legal Standard

A temporary restraining order, as with any preliminary injunctive relief, is an extraordinary remedy that is not awarded as of right. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The standards governing temporary restraining orders are "substantially similar" to those governing preliminary injunctions. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). To obtain injunctive relief, petitioner must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter*,

---

[1] Petitioner Esvin Perez Guinea requested a bond hearing before an immigration judge, and that request was denied. ECF No. 1-3 at 58. The record does not indicate whether the remaining petitioners formally requested bond hearings.

555 U.S. at 20.  Although the court must consider all four *Winter* factors, the first factor—likely success on the merits—is the most important.  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

**Analysis**

Petitioners' motion for a temporary restraining order is an emergency motion for preliminary injunctive relief, and the court has tried to address it quickly.  This order considers only whether the movants have a "fair chance of success on the merits"; it is not intended as the court's final word on the issues presented.  *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).  After review of the *Winter* factors, the court finds that petitioners have carried their burden, and a temporary restraining order will issue.[2]

**I.      Likelihood of Success of the Merits**

The central question dividing the parties is whether petitioners can be subjected to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), or whether instead their detention is governed by 8 U.S.C. § 1226(a).[3]  Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."  8 U.S.C. § 1225(b)(2)(A).  No bond hearing is provided.  *Id.*  By contrast, "[u]nder section 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

---

[2] Petitioners argue that exhaustion of their administrative remedies is not required to obtain the relief they seek.  ECF No. 2-2 at 27.  Because the government has not argued the issue, the court sees no need to address it.

[3] This question is, appropriately, also the basis for the underlying petition.  ECF No. 1 at 4 ("Accordingly, Petitioners seek a writ of habeas corpus requiring that they be released unless Respondents provide a bond hearing under § 1226(a) within seven days.").  And, in this case, that the same relief is sought in the temporary restraining order and the petition is no bar to granting the motion.  *See Yuhua Yang v. Kaiser*, 2:25-cv-02205-DAD-AC (HC), 2025 U.S. Dist. LEXIS 196161, *30 (E.D. Cal. Aug. 20, 2025) (rejecting respondents' argument that the temporary restraining order impermissibly sought the same relief as the habeas petition).

Until a few months ago, the government consistently applied section 1226(a), and not section 1225(b)(2)(A), to noncitizens present in the interior of the United States who were arrested by an immigration official and eligible for removal. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."); ECF No. 2-2 at 23-24; ECF No. 9 at 5-6. Respondents do not dispute this, acknowledging that, "[u]ntil recently, the government interpreted § 1226(a) to be an available detention authority for aliens present without being admitted or paroled placed directly in full removal proceedings under § 1229a." ECF No. 9 at 5. However, in July 2025, the Department of Homeland Security ("DHS") announced that it, "in coordination with the Department of Justice (DOJ), ha[d] revisited its legal position on detention and release authorities." ECF No. 1-3 at 61. DHS now maintains that section 1225(b)(2)(A)—and not section 1226(a)—applies to all immigrants to the United States who have not been lawfully admitted, regardless of how long they have been present in the country. ECF No. 9 at 4.

In the view of the government, its prior approach to the statute was "incorrect." ECF No. 9 at 6. Petitioners contend the opposite, maintaining that DHS's new approach is founded on an impermissible misreading of the INA, and that it is contrary to that Act's statutory framework and the agency's longstanding practice of applying § 1226 to immigrants who are residing within the United States. *Id.* at 8. The issue is one of statutory interpretation, and so the court begins with the plain text of the INA.[4] *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019).

Section 1225 provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). There is only one exception to this mandatory detention under section 1225(b)(2): the noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant benefit"

---

[4] In its opposition, the government contends that the six petitioners should not be permitted to proceed together, arguing that the mere fact that their "claims 'arise under the same general law does not necessarily establish a common question of law or fact.'" ECF 9 at 7 (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). Because petitioners have not had an opportunity to respond to this argument and given that misjoinder is not a ground for dismissal, *see* Fed. R. Civ. P. 21, the court declines to address this issue at this time.

1   under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

2         While section 1225's text limits its reach to applicants "seeking admission," section 1226
3   does not include the same qualifying language. The default rule, section 1226(a), provides that,
4   for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the
5   Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the
6   noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole." 8 U.S.C.
7   §§ 1226(a)(1)-(2). Section 1226(c) excludes certain categories of noncitizens from discretionary
8   release under section 1226(a). "Under § 1226(c), the 'Attorney General shall take into custody
9   any alien' who falls into one of several enumerated categories involving criminal offenses and
10  terrorist activities." *Jennings*, 583 U.S. at 289. Thus, the plain text of section 1225(b)(2) limits
11  its application to noncitizens "seeking admission" to the United States.

12        The government urges the court to read section 1225 as using the terms "applicant for
13  admission" and "seeking admission" interchangeably. ECF No. 9 at 7-8. According to the
14  government, all noncitizens who have not been admitted to the United States—i.e., "applicants
15  for admission"—are necessarily "seeking admission" for purposes of section 1225(a)(b)(A).
16  Thus, the government contends that § 1225(b)(2) applies to all noncitizens who have not been
17  admitted "regardless of the duration of the alien's presence in the United States or the alien's
18  distance from the boarder." ECF No. 9 at 7.

19        The government's reading would require the court to conclude that Congress
20  unnecessarily included the phrase "seeking admission" when drafting § 1225. Courts, however,
21  presume that Congress intended its words to have meaning. *See United States, ex rel. Polansky v.*
22  *Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute' should
23  have meaning.") (internal quotation marks omitted). Under its plain text, for section
24  § 1225(b)(2)'s mandatory detention to apply, "a noncitizen must (1) be an applicant for
25  admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be
26  admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, *11 (E.D.
27  Cal. Oct. 16, 2025). If all "applicants for admissions" were also individuals "seeking admission,"
28  the phrase "seeking admission" would be unnecessary. Such a reading would run contrary to the

rule against surplusage. *Polansky*, 599 U.S. at 432 ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) (holding that 1225(b)(2) did not apply to a noncitizen already residing in the country because "she was not 'seeking admission' at" the time of her arrest).

Moreover, the government's interpretation cannot be squared with the text of section 1226. First, were it possible to read section 1225 in the manner favored by the government, section 1226(a)'s requirement that detained noncitizens be afforded bond hearings—arguably the centerpiece of section 1226—would serve no purpose. This would run afoul not only of the rule against surplusage, *see supra*, but would clash with the Supreme Court's acknowledgement, in 2018, of section 1226(a)'s continued relevance. *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").

Second, under section 1226(c), Congress included categories of noncitizens whose detention is mandatory, including those determined to have committed certain criminal offenses. 8 U.S.C. § 1226(c). If, as the government now contends, section 1225 applied to all noncitizens who are inadmissible, this provision of section 1226 would also be superfluous.

Notably, in *Jennings*, the Supreme Court rejected different arguments that would have rendered 8 U.S.C. § 1226(c) superfluous, stating, "[f]ar from being redundant, then, § 1226(c) and the PATRIOT Act apply to different categories of aliens in different ways. There is thus no reason to depart from the plain meaning of § 1226(c) in order to avoid making the provision superfluous." *Jennings*, 583 U.S. at 305. Against this backdrop, it would make little sense to accept the government's argument that both sections 1226(a) and 1226(c) have been taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy.

Finally, the Laken Riley Act ("LRA")—passed less than a year ago—bears mention. The LRA amended section 1226(c) to create new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025)

(describing the LRA). But, under the government's theory of section 1225, this new law would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted— and, in fact, required—by section 1225, the LRA would be surplusage. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995); *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). And, here, the remarkable recency of the amendment shows that, far from considering section 1226 a dead letter, Congress considers it worthy of upkeep.

In response, the government urges the court to consider section 1225 in isolation. The court, however, must construe statutes as a whole and give effect to their plain text. *See King v. Burwell*, 576 U.S. 476, 486 (2015) (in determining the correct reading of a statute, courts must read "words in their context and with a view to their place in the overall statutory scheme") (quotations omitted); *Graham Cnty. Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) ("Courts have a duty to construe statutes, not isolated provisions.") (quotations omitted). A shift in policy does not permit this court to turn a blind eye to the INA's statutory scheme.

And, as noted *supra*, the government acknowledges that, until recently, it was longstanding agency practice to interpret these provisions in the manner argued by petitioners. This is not without significance, since prior agency practice, though not dispositive, can help inform this court's determination of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is.") (internal quotation marks omitted). Other courts have emphasized the same. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1259 (W.D. Wash. Apr. 24, 2025) ("Congress enacted the [Laken Riley Act] against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, the court notes that arguments substantially similar to those made by the

government here have been rejected by a large majority of district courts nationwide. *See, e.g.*, *Sandigo Manzanez v. Bondi*, No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, *3 (E.D. Cal. Sept. 3, 2025) ("[T]he legal arguments Respondents rely upon to support their position that section 1225 applies here have been consistently rejected by a majority of courts in this district, and courts across the country."); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025) (collecting cases).[5] The government's argument also runs contrary of the Supreme Court's interpretation of the relevant statutes in *Jennings*, which observed that section § 1225(b) "applies primarily to aliens seeking entry into the United States," while sections 1226(a) and (c) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." *Id.*

Accordingly, the court finds that petitioners are likely subject to section 1226 and therefore entitled to a bond hearing. The first *Winter* factor is satisfied.[6]

## II. Irreparable Harm

I find that petitioners have shown that they will suffer irreparable harm absent a temporary

---

[5] The Board of Immigration Appeals endorsed the government's position in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The persuasive power of the BIA's ruling, however, is limited. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

[6] The parties' briefs primarily address petitioners' claim that they were unlawfully detained under section 1225. Having concluded that petitioners are likely to succeed on this claim, the court need not decide whether they are also likely to succeed on their due process claim. Nevertheless, the court is skeptical of the government's argument that petitioners, who were arrested in the interior of the United States, are entitled only to statutory protections granted by Congress and not constitutional due process protections. ECF No. 9 at 6. The government's argument relies on cases considering the rights of non-citizens at the threshold of and seeking entry to the United States. *See, e.g.*, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 104 (2020) (holding that an "alien who is detained shortly after unlawful entry . . . has only those rights regarding admission that Congress has provided by statute," i.e., not due process rights). Such cases may have limited relevance to the status of non-citizens present in the interior of the country, such as petitioners. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").

restraining order. The Court of Appeals has recognized that anyone subject to immigration detention is exposed to irreparable harms. *See Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) ("The briefs of amici curiae highlight in more concrete terms the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)."); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").

### III. Balance of Equities and the Public Interest

Where the government is a party to the case, the last two *Winter* factors are considered together. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). These factors weigh in favor of petitioners. First, the Ninth Circuit has stated that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."). Second, the government has not shown that, if any petitioner were released, they would pose a danger to the community or a flight risk.

### IV. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the "court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, the court will not require petitioners to provide security.

Accordingly, it is hereby ORDERED that:

1. Petitioners' motion for temporary restraining order, ECF No. 2, is GRANTED.

2. Petitioners shall be provided individualized bond hearings within seven days of the date of this order.

3. Respondents are prohibited from relocating petitioners outside of the Eastern District pending final resolution of this litigation.

IT IS SO ORDERED.

Dated:   November 24, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE